UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 17-11527-JGR |
| WESTMOUNTAIN GOLD, INC. ) | |
| a Colorado corporation ) | |
| ) | Chapter 11 |
| EIN: 26-1315498 ) | |
| Debtor. ) | |

**DECLARATION OF WESTMOUNTAIN GOLD, INC. DIRECTORS**

Richard Bloom and Brian Klemsz, Directors of WestMountain Gold, Inc. make this Declaration under penalty of perjury pursuant to 28 U.S.C. §1746 as follows:

**Background**

1.  The Debtor, WestMountain Gold, Inc. ("WestMountain") filed its Voluntary Petition pursuant to Chapter 11 of the Bankruptcy Code on March 1, 2017 ("Petition Date").

2.  The Debtor, Terra Gold Corp. ("Terra") filed its Voluntary Petition pursuant to Chapter 11 of the Bankruptcy Code on March 1, 2017.

3.  WestMountain is a publicly held corporation and is the parent company of Terra. Together WestMountain and Terra are referred to as the Debtor unless the context refers to only one entity in which case the individual name will be used.

4.  The Debtors are filing a Motion for Joint Administration of their two chapter 11 cases.

5.  We are both Directors of the Debtors.

6.  Terra was a joint venture partner with a company known as Raven Gold Alaska, Inc. ("Raven") through February 12, 2014 on a gold system project ("TMC Project") in Alaska. On February 12, 2014 WestMountain through Terra acquired 100% of the TMC Project from Raven for $1.8 million in cash and 200,000 shares of WestMountain stock.

7.  The Debtor is currently focused on exploration and bulk sample mineral production from mineralized material containing gold at the TMC Project in the state of Alaska. The TMC Project consists of 339 Alaska state mining claims plus an additional 5

unpatented lode mining claims held under lease (subject to a 3-4% net smelter return royalty to the lessor, dependent upon the gold price) covering 223 square kilometers (22,300 hectares). The property is centered on an 8-km-long trend of gold vein occurrences. All government permits and reclamation plans for continued exploration through 2019 were renewed and the fees to maintain the Terra claims through September 2017 were paid by the Debtor. The property lies approximately 200 kilometers west-northwest of Anchorage and is accessible via helicopter or fixed-wing aircraft. The property has haul roads, a mill facility and adjoining camp infrastructure, a tailings pond and other infrastructure. The remote camp is powered by diesel powered generators and water is supplied to the mill by spring fed sources and a year-round water well.

8. The Debtors' experienced a significant slough event at its mining property in Alaska on or about September 2, 2016. The event occurred in an area where the Debtor was conducting bulk surface sampling operations. While no injuries occurred and no equipment was lost, all operations at the project ceased. The slough event caused approximately 25,000 tons of rock material to completely cover the main vein in the bulk surface sampling area. The Debtor had been excavating vein material from this area and had excavated approximately 1,357 tons of vein material to date. This mining activity had provided the Debtor with an income that supported its operations.

**Operations**

9. The Debtor currently employs 4 people on a full and part time basis to operate its business.

10. The Debtor pays its employees on a bi-monthly basis. The Debtor has calculated the amount of its pre-petition payroll for the periods prior to February 15, 2017. The pre-petition unpaid gross payroll, including all taxes and applicable charges is approximately $25,123. In the event the employees are not paid on time, they will suffer personal hardships since they generally survive on their earnings. The loss of employees, if they quit their jobs, would also cost the Debtor a substantial loss in terms of having to rehire and train new employees.

11. The current fair market value of the Debtors' assets is currently unknown. The Debtors have no cash on hand and have little to no ongoing income since production

of gold from the TMC Project has stopped. The only material assets consist of certain inventory derived from the mine, equipment, and mining permits and other rights associated with the mine and TMC Project. Nothing is able to be converted to cash on a rapid basis.

**Secured Creditors**

12. The Debtor has survived by borrowing funds on a secured basis from BOCO Investments LLC ("BOCO"). BOCO is the Debtors' principal secured lender with respect to both WestMountain and Terra and virtually all assets of both companies are pledged to BOCO to secure its outstanding loans. The BOCO loans were made over time and multiple restructurings under which a portion of the BOCO debt was converted to equity. The total principal amount due BOCO today is approximately $4,169,251.

13. BOCO currently is or has the right to become the beneficial owner of approximately 55.5% of WestMountain's common stock and is the primary creditor of WestMountain and Terra.

14. The Debtor has no current source of income until it is recapitalized and has sufficient funding to re-commence mining operations in Alaska.

15. In order to maintain ongoing operations, the Debtor needs to pay for operating expenses such as employee salaries, utilities, insurance, rents due for lease of the certain facilities, telephones, and expenses associated with maintaining its permits and mining approvals in Alaska. The largest upcoming expense is the payment of $125,000 due to Mr. Ben Porterfield on or about March 20, 2017 on account of rent due under an Amended Lease dated February 18, 2011 for five mining claims related to the TMC Project known as Fish Creek 1-5 (ADL-648383 through ADL-648387) which claims are assigned to the TLC Project.

16. The only way the Debtor can raise funds for its reorganization effort is through debtor in possession funding which BOCO is willing to provide.

17. BOCO has proposed that it will loan to WestMountain and guaranteed by Terra, debtor in possession financing in the amount of $1,000,000 for the chapter 11 case. The Debtor will be requesting $150,000 on an emergency basis at the outset of the case to meet expenses over the first approximately two weeks of the case, which if they are not

paid will result in irreparable harm and injury to the Debtor and the estate. The loan will be subject to the following terms: a) the loan will hold an administrative expense priority claim; b) it will mature in one year unless a termination event occurs earlier; c) interest will accrue on the loan at the rate of 8% per annum with a default rate of 14% per annum; d) the loan may be prepaid at any time without penalty; and e) the loan will be secured by all assets of the Debtor with a senior priming lien (senior to the existing BOCO liens).

18. The Debtor has prepared a budget of its monthly expenses through May 8, 2017. A copy of the budget is attached hereto as Exhibit A. While the budget does provide for payment of legal and accounting fees and costs, such fees and costs will not be paid pursuant to the Debtors' emergency request to approve the loan to the extent of $150,000.

19. Approval of the BOCO debtor in possession loan on an interim and emergency basis to the extent of $150,000, will prevent irreparable harm and injury, is in the best interest of the Debtor and the estate, and will preserve the Debtor as an operating entity and its ability to re-commence mining operations in Alaska.

20. Approval of the Debtors' request to pay pre-petition payroll utilizing the BOCO post-petition financing is in the best interest of the estates and will allow the Debtors to retain its experienced employees and maintain goodwill. No employee will be paid more than $12,850.

I declare under penalty of perjury that the foregoing Declaration is true and correct.

February 28, 2017

WESTMOUNTAIN GOLD, INC.

By:_____
Richard Bloom, Director

By:_____
Brian Klemsz, Director

paid will result in irreparable harm and injury to the Debtor and the estate. The loan will be subject to the following terms: a) the loan will hold an administrative expense priority claim; b) it will mature in one year unless a termination event occurs earlier; c) interest will accrue on the loan at the rate of 8% per annum with a default rate of 14% per annum; d) the loan may be prepaid at any time without penalty; and e) the loan will be secured by all assets of the Debtor with a senior priming lien (senior to the existing BOCO liens).

18. The Debtor has prepared a budget of its monthly expenses through May 8, 2017. A copy of the budget is attached hereto as Exhibit A. While the budget does provide for payment of legal and accounting fees and costs, such fees and costs will not be paid pursuant to the Debtors' emergency request to approve the loan to the extent of $150,000.

19. Approval of the BOCO debtor in possession loan on an interim and emergency basis to the extent of $150,000, will prevent irreparable harm and injury, is in the best interest of the Debtor and the estate, and will preserve the Debtor as an operating entity and its ability to re-commence mining operations in Alaska.

20. Approval of the Debtors' request to pay pre-petition payroll utilizing the BOCO post-petition financing is in the best interest of the estates and will allow the Debtors to retain its experienced employees and maintain goodwill. No employee will be paid more than $12,850.

I declare under penalty of perjury that the foregoing Declaration is true and correct.

February 28, 2017

WESTMOUNTAIN GOLD, INC.

By:_____
    Richard Bloom, Director

By:_____
    Brian Klemsz, Director

,

TERRA GOLD CORPORATION

By: /s/ Richard Bloom
Richard Bloom, Director

By:_____
Brian Klemsz, Director

TERRA GOLD CORPORATION

By:_____
      Richard Bloom, Director

By:_____*[signature]*_____
      Brian Klemsz, Director