UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 17-11527-JGR |
| WESTMOUNTAIN GOLD, INC. ) | |
| a Colorado corporation ) | |
| ) | Chapter 11 |
| EIN: 26-1315498 ) | |
|    Debtor. ) | |
| ) | |
| _____ ) | |
| ) | |
| IN RE: ) | |
| ) | Case No. 17-11528-JGR |
| TERRA GOLD CORPORATION, an Alaska ) | |
| Corporation ) | Chapter 11 |
| ) | |
| EIN: 45-5500508 ) | |
|    Debtor. ) | Jointly Administered Under |
| ) | Case No. 17-11527-JGR |

**AMENDED MOTION FOR APPROVAL OF LENDING
AGREEMENT AND FOR AUTHORITY TO INCUR
DEBT ON AN ADMINISTRATIVE AND SECURED BASIS[1]**

      The Debtors, WestMountain Gold, Inc. and Terra Gold Corporation (collectively "Debtors"), by and through their attorneys, Kutner Brinen, P.C., move the Court pursuant to 11 U.S.C. §§ 361 and 364(b) and (d)(1), and Bankruptcy Rules 4001 and 9014, for an Order approving the Debtors' Motion For Approval of a Lending Agreement and for Authority to Incur Debt on an Administrative and Secured Basis authorizing the Debtor to borrow up to $1,000,000 from BOCO Investments, LLC, and as grounds therefor state as follows:

### BACKGROUND

    1.    The Debtor, WestMountain Gold, Inc. ("WMG") filed for relief under chapter 11 of the Bankruptcy Code on March 1, 2017 and remains a debtor in possession.

---

[1] This Motion is amended only to include the joint caption.

2. Terra Gold Corporation ("TGC") filed for relief under chapter 11 of the Bankruptcy Code on March 1, 2017 and remains a debtor in possession.

3. WMG is a publicly held company and is the parent company of TGC.

4. TGC was a joint venture partner with a company known as Raven Gold Alaska, Inc. ("Raven") through February 12, 2014 on a gold system project ("TMC Project") in Alaska. On February 12, 2014 WestMountain through TGC acquired 100% of the TMC Project from Raven for $1.8 million in cash and 200,000 shares of WestMountain stock.

5. The Debtors are currently focused on exploration and bulk sample mineral production from mineralized material containing gold at the TMC Project in the state of Alaska. The TMC Project consists of 339 Alaska state mining claims plus an additional 5 unpatented lode mining claims held under lease (subject to a 3-4% net smelter return royalty to the lessor, dependent upon the gold price) covering 223 square kilometers (22,300 hectares). The property is centered on an 8-km-long trend of gold vein occurrences. All government permits and reclamation plans for continued exploration through 2019 were renewed and the fees to maintain the TGC claims through September 2017 were paid by the Debtor. The property lies approximately 200 kilometers west-northwest of Anchorage and is accessible via helicopter or fixed-wing aircraft. The property has haul roads, a mill facility and adjoining camp infrastructure, a tailings pond and other infrastructure. The remote camp is powered by diesel powered generators and water is supplied to the mill by spring fed sources and a year-round water well.

6. TGC was a joint venture partner with a company known as Raven Gold Alaska, Inc. ("Raven") through February 12, 2014 on a gold system project ("TMC Project") in Alaska. On February 12, 2014 WestMountain through TGC acquired 100% of the TMC Project from Raven for $1.8 million in cash and 200,000 shares of WestMountain stock.

7. The Debtors' experienced a significant slough event at its mining property in Alaska on or about September 2, 2016. The event occurred in an area where the Debtor was conducting bulk surface sampling operations. While no injuries occurred and no equipment was lost, all operations at the project ceased. The slough event caused approximately 25,000 tons of rock material to completely cover the main vein in the bulk surface sampling area. The Debtor had been

2

excavating vein material from this area and had excavated approximately 1,357 tons of vein material to date. This mining activity had provided the Debtor with an income that supported its operations.

8. The Debtors' principal lender is BOCO Investments, LLC ("BOCO"). BOCO has advanced loans to the Debtors over the time period of 2012 through 2017 in the original principal amount of approximately $6,091,255. The loans have not been paid on time and additional interest, fees, and costs have accrued on the loans. The BOCO loans are secured by liens encumbering the WMG and TGC real and personal property.

9. BOCO's most recent loan to both WMG and TGC was a loan in the amount of $1,224,140 which was advanced in February 2017, pre-petition, to enable TGC to obtain a Certificate of Deposit that had to be pledged to the State of Alaska, Department of Natural Resources in order to guaranty reclamation obligations with respect to the Permit and the TMC Project. Without the guaranty, TGC may have lost its Permit.

10. The Debtor currently employs approximately 4 people who work for the Debtor on a full and part time basis.

11. The Debtor currently has no available line of credit on which to operate. The Debtor is in need of funding in order to pay operating expenses, fund payroll, and pay administrative expenses. A credit line is necessary to enable the Debtor to meet these expenses.

12. The Debtors' principal asset is its TMC Project. The Debtor needs to maintain its operation and meet its obligation to retain the Permits and further develop its mining opportunities in Alaska.

## POST-PETITION LOAN

13. Debtor desires to enter into an agreement with BOCO under which BOCO will provide the Debtor with debtor-in-possession financing in the form of a line of credit up to $1,000,000 ("Loan"). The proposed Loan will allow the Debtor to meet its post-petition obligations and provide financial strength that will assure the Debtors the ability to operate and pay post-petition obligations on a timely basis. The post-petition obligations include wages in order preserve the Debtors' goodwill and maintain its ability to develop its mining operations in Alaska. The Debtor also is in need funds to pay ongoing administrative and operational expenses.

14. The proposed Loan will be made to WMG as the borrower and guaranteed by TGC.

15. The Debtor has prepared a budget of expected post-petition operations through May 8, 2017 which is attached hereto and incorporated herein as Exhibit A ("Budget"). The Budget may be extended by the Debtor but is always subject to approval by BOCO. The proposed Loan will be used by the Debtor initially to fund the Debtor's pre-petition payroll in full or in part and to meet the expenses set forth in the Budget over the first 2 weeks of the case. The Debtors expect that the initial emergency loan is necessary to avoid irreparable harm and injury and will not exceed $150,000.

16. The Loan is to be evidenced and governed by the Lending Agreement, a copy of which is attached hereto as Exhibit B. The loan will be further represented by a Promissory Note which is attached to the Lending Agreement and collateralized by a Deed of Trust, Security Agreement, Assignment of Production, Rents and Leasehold Interests, Financing Statement and Fixture Filing attached hereto as Exhibit C (collectively Exhibits B and C are referred to as "Loan Documents").

17. BOCO has required that in order to fund the loan, the loan must be secured by a first lien encumbering all assets of the WMG and TGC bankruptcy estates. The only current lien on the assets of the estates is that held by BOCO. BOCO consents to the subordination of its existing liens to the new lien granted to BOCO. Such a lien is appropriate in that the Debtors cannot obtain a loan from any other known source and the existing lender, BOCO, agrees that its pre-petition liens will be adequately protected and consents to subordinate such liens.

18. The terms of the Loan are set forth in more particularity in the Lending Agreement however the major provisions are summarized as follows:
   a. The Loan will accrue interest at the rate of 8% per annum prior to Plan confirmation;
   b. The Loan will mature in one year or earlier in the event of Plan confirmation, an event of default, or conversion of the case to Chapter 7; and
   c. The Loan will hold administrative expense claim status pursuant to 11 U.S.C. § 364(b) however the Loan shall not be senior to or grounds for disgorgement of those administrative expenses and professional fees paid by the Debtor with the Loan proceeds prior to the maturity date of the Loan. The Loan will also be secured by a senior lien on all of the WMG and TGC real and personal property assets.

## BENEFIT TO ESTATE

19. The granting of this Motion is in the best interest of Debtor, the estate and creditors. The Loan will enable the Debtor to retain employees, preserve assets, and maintain operations. The Loan will enable the Debtor to fund operating expenses. The Loan will also provide the Debtor with the ability to meet expenses until operations can be restarted and/or additional capital can be raised.

20. The Loan is in the best interest of the Debtor and the estate since it will allow the Debtor to preserve its going concern value. If the Debtor were to liquidate at this time, unsecured creditors would likely receive nothing. Through the proposed loan, the Debtor can maintain its going concern value, proceed with the reorganization and generate income or investment capital to pay creditors.

21. The Debtor believes that the terms of the proposed Loan are fair and reasonable and that the Debtor is unable to obtain post-petition financing on better terms.

22. Based on the foregoing, and pursuant to 11 U.S.C. §364(b), the Debtor requests authority to borrow up to $1,000,000 from Lender as more particularly set forth herein.

23. The Debtor further requests that it be authorized to borrow up to $150,000 of the proposed Loan on an emergency basis to fund the payment of expenses for the first two weeks of the case in order to prevent irreparable harm and injury.

WHEREFORE, the Debtor prays that the Court make and enter an Order as follows:

1. For approval of the Lending Agreement, Promissory Note, and Deed of Trust, Security Agreement, Assignment of Production, Rents and Leasehold Interests, Financing Statement and Fixture Filing attached hereto as Exhibits B and C;

2. Authorizing the Debtor to incur up to $1,000,000 in unsecured debt with administrative expense status and a senior lien on assets as set forth herein from Lender; and

3. For such further and additional relief as to the Court may appear proper.

DATED: March 2, 2017            Respectfully submitted,

By:    */s/ Lee M. Kutner*
       Lee M. Kutner #10966

**KUTNER BRINEN, P.C.**
1660 Lincoln St.
Suite 1850
Denver, CO 80264
Telephone: (303) 832-2400
Telecopy: (303) 832-1510
E-Mail: lmk@kutnerlaw.com

**EXHIBITS ARE THE SAME AS THE ORIGINAL MOTION FOR APPROVAL OF LENDING AGREEMENT FILED WITH THE COURT**