# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: | Case No. 17-11527-JGR |
| WESTMOUNTAIN GOLD, INC.<br>a Colorado corporation | Chapter 11 |
| EIN: 26-1315498<br>    Debtor. | |
| IN RE: | Case No. 17-11528-JGR |
| TERRA GOLD CORPORATION, an Alaska<br>Corporation | Chapter 11 |
| EIN: 45-5500508<br>    Debtor. | Jointly Administered Under<br>Case No. 17-11527-JGR |
| WESTMOUNTAIN GOLD, INC.<br>    Plaintiff, | Adversary No. 17-    -JGR |
| v. | |
| DANIEL VAUGHAN AND DANIEL PACE AND<br>THE LAW FIRM OF DANIEL PACE<br>    Defendants. | |

## COMPLAINT TO AVOID AND RECOVER PREFERENTIAL TRANSFERS

The Plaintiff, WestMountain Gold, Inc., by and through its attorneys Kutner Brinen, P.C., states its Complaint against the Defendants as follows:

1.     The Plaintiff is a debtor in possession having filed its bankruptcy case under Chapter 11 of the Bankruptcy Code on March 1, 2017 in the Bankruptcy Court for the District of Colorado, Case No. 17-11527-JGR ("Bankruptcy Case").

2. Defendant, Daniel Vaughn ("Vaughn") is an individual who on information and belief resides in the State of Alaska. At one time pre-petition Vaughn was an employee of the Plaintiff.

3. Defendant, Daniel Pace ("Pace") is an individual who is an attorney in the State of Alaska and on information and belief resides in the State of Alaska.

4. Defendant Law Office of Daniel I. Pace is on information and belief the name of the entity or a business name for Pace with offices located at 101 E. 9th Ave., Suite 7A, Anchorage, Alaska 99501. The Law Office of Daniel I. Pace shall be referred to collectively with Pace as "Pace".

5. This action is brought to seek relief in accordance with 11 U.S.C. §§547, 550 and other applicable law.

6. This adversary proceeding arises out of and relates to the above-captioned Chapter 11 case.

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter constitutes a "core" proceeding within the meaning of 28 U.S.C. §§ 157(b)(l) and 157(b)(2)(F) and (O). The Court has authority to enter final orders in this adversary proceeding and the Plaintiff consents to entry of final orders by the Bankruptcy Court.

8. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1409, as this adversary proceeding arises in or relates to a case under Title 11 of the United States Code, which is pending in this district.

9. The Plaintiff filed its Voluntary Petition on March 1, 2017 ("Petition Date").

10. The Plaintiff is a publicly held corporation that is engaged in business as a precious metals exploration company. The Plaintiff's major project is known as the Terra or TMC Project which consists of a gold mining operation located in the State of Alaska.

11. Vaughan is an individual who filed a pre-petition lawsuit naming the Plaintiff as a defendant in the Superior Court for State of Alaska, Third Judicial District, case number 3AN-16-06398CI in order to collect wages and other claims ("Lawsuit").

12. The Lawsuit was settled and the parties to the Lawsuit, on or about November 7, 2016, executed a Settlement, Release, Covenant Not to Sue, and Waiver Agreement ("Settlement"). A copy of the Settlement is attached hereto as Exhibit A.

13. Pursuant to the terms of the Settlement, the Plaintiff on January 5, 2017, sent two wire transfers to pay the unsecured settlement amount due to Vaughn and his attorney, Pace. The first wire was for $26,050 and the beneficiary was Pace. The second wire was for $21,956.27 and the beneficiary was Pace. The Settlement provided in its terms that the sum of $26,050 be paid to Pace and the $27,000 be paid to Vaughn for wage and non-wage related damages. Collectively all of the payments total $53,050 ("Transfers").

14. The Transfers were all sent to Pace's office and the specific payment made to Pace was money due to Vaughn but paid to Pace to pay Vaughn's legal fees and costs. As such Pace is a direct and subsequent transferee of the monies due and paid to Vaughn.

15. An additional transfer of 165,000 shares of the Plaintiff's common stock was transferred to Vaughn on December 2, 2016 on account of his unsecured claim pursuant to the Settlement within the ninety day preference period ("Stock Transfer"). A copy of the stock certificate is attached hereto as Exhibit B.

16. The Transfers and the Stock Transfer were all made within ninety (90) days of the Plaintiff's Petition Date.

17. The Transfers and the Stock Transfer were all made on account of antecedent unsecured claims held by Vaughn.

18. The Transfers and the Stock Transfer all enabled both Defendants to receive more than such creditors would receive if this case were a case under chapter 7 of the Bankruptcy Code, the Transfers and Stock Transfer had not been made, and the Defendants received payment of such claims to the extent provided by the provisions of the Bankruptcy Code.

19. The Transfers and Stock Transfer were all made while the Plaintiff was insolvent.

20. The Transfers and Stock Transfer are all avoidable pursuant to 11 U.S.C. §547.

21. The Plaintiff may recover from the Defendants the amount and value of the Transfer and the Stock Transfer for the benefit of the Plaintiff's bankruptcy estate under 11 U.S.C. §550.

WHEREFORE, Plaintiff prays that the Court make and enter judgment in favor of the Plaintiff: a) avoiding all of the Transfers and Stock Transfer made to the Defendants; b) against the Defendants jointly and severally for no less than the amount of the Transfers and Stock Transfer; and c) for such further and additional relief as to the Court may appear proper.

Dated: August 17, 2017                    Respectfully submitted,

By: */s/ Lee M. Kutner*
   Lee M. Kutner, #10966

**KUTNER BRINEN, P.C.**
1660 Lincoln Street, Suite 1850
Denver, CO 80264
Telephone: (303) 832-2400
Telecopy: (303) 832-1510
E-Mail: lmk@kutnerlaw.com

COUNSEL FOR THE PLAINTIFF

## SETTLEMENT, RELEASE, COVENANT NOT TO SUE, AND WAIVER AGREEMENT

### I. PARTIES

Daniel Vaughan ("Vaughan") and WestMountain Gold, Inc. ("WestMountain") collectively (the "Parties") have entered into this Settlement, Release, Covenant Not to Sue, and Waiver Agreement ("Agreement"), and have reached an amicable resolution of any and all disputes as set forth in this Agreement including, but not limited to, those set forth in Daniel Vaughan v. WestMountain Gold and James Creamer, 3AN-16-06398CI (the "Lawsuit"), which was filed in Anchorage, Alaska.

### II. RECITALS

WHEREAS, WestMountain Gold employed Vaughan.

WHEREAS, Vaughan filed a lawsuit in the Superior Court for State of Alaska, Third Judicial District captioned: Daniel Vaughan v. WestMountain Gold and James Creamer, 3AN-16-06398CI (the "Lawsuit").

WHEREAS, the Lawsuit alleged violations of the Alaska Wage and Hour Act, Alaska Statutes 23.10.050 *et seq.*, for failure to pay overtime compensation.

WHERAS, Vaughan desires to file an amended complaint seeking damages for violations of the Fair Labor Standards Act, breach of contract, failure to pay wages when due, and unlawful retaliation.

WHEREAS, Vaughan, WestMountain Gold and Creamer agree that the Lawsuit shall be dismissed; and

WHEREAS, without admitting fault or liability in any respect, same being expressly denied, Vaughan, WestMountain Gold and Creamer desire to settle and resolve fully and finally any potential claims, known or later discovered, that Vaughan may presently have arising out of or relating in any way to Vaughan's employment or separation from employment with WestMountain Gold and Creamer.

NOW THEREFORE, in consideration of the mutual promises hereinafter set forth, and for other good and valuable consideration, receipt of which is hereby acknowledged, Vaughan and WestMountain Gold agree as follows:

### III. TERMS AND CONDITIONS

**1. Monetary and Other Consideration.**

A. In full and complete satisfaction of any and all claims as set forth in Paragraph 2 of this Agreement, and in consideration for Vaughan's execution of this Agreement, and subject to all other terms and conditions of this Agreement,

---

WestMountain Gold agrees to pay Vaughan in the amount of TWENTY SEVEN THOUSAND dollars ($27,000), less applicable tax deductions described below, in the form of a cashier's check addressed to "Pace Law Offices in Trust For Daniel Vaughan" and mailed to 101 E 9th Ave, Ste 7A, Anchorage, AK 99501. This settlement shall be paid within 30 days of execution of this Settlement Agreement and the Lawsuit has been dismissed with prejudice and apportioned as follows:

(i) Payment in the amount of THIRTEEN THOUSAND FIVE HUNDRED dollars ($13,500), less applicable tax deductions, for wage related damages.

(ii) Payment in the amount of THIRTEEN THOUSAND FIVE HUNDRED dollars ($13,500), which will not be subject to tax deductions, for non-wage related damages.

(iii) Payment in the amount of twenty-six thousand fifty dollars ($26,050.00) shall be paid to Vaughan's attorney Daniel Pace.

B. In addition, WestMountain Gold agrees to transfer 165,000 shares of WestMountain Gold, Inc. common stock to Vaughan within 30 days of execution of this Settlement Agreement and the Lawsuit has been dismissed with prejudice.

C. Upon execution of this Agreement, the Parties must and shall cause their respective counsel to file a Notice of Settlement and Stipulated Dismissal with the Court and seek the Court's approval of the settlement. The Settlement and Stipulated Dismissal shall be contingent upon WestMountain Gold not breaching the payment and the agreement to transfer 165,000 shares contained in Paragraphs 1(A)-(B). Should WestMountain Gold breach its obligations set forth in Paragraphs 1(A)-(B) by more than 7 business days, Daniel Vaughan shall be permitted to file a motion with the court to reopen the case and obtain a judgment against WestMountain for the balance of the settlement due and pursue any and all claims Vaughan may have against Creamer. In such a situation, the terms of this Agreement contained in Paragraph 2(A)-(C) that relate in any way to releasing Creamer from liability are null and void. Any money paid to Vaughan by WestMountain Gold will be applied to Vaughan's damages arising furthest in time from today's date, subject to the applicable statute of limitations, to avoid a double recovery.

D. The payment to Vaughan described in Paragraph 1(A) includes satisfaction of any liquidated damages that may be due in accordance with AS 23.10.110(a) or federal law.

E. The payments to Vaughan set forth in Paragraph 1 shall be made within thirty (30) business days of the effective date of this Agreement. The Agreement will be effective after (1) it has been executed by the Parties and counsel for WestMountain Gold and Creamer has received a copy of the executed Agreement by

Vaughan and (2) proof that the Lawsuit has been dismissed with prejudice as provided in Paragraph 2.

## 2. Conditional Release of Claims.

A. Vaughan, his successors, assigns, agents, and attorneys, hereby releases, exonerates, satisfies, acquits, and forever discharges Creamer and WestMountain Gold, its officers, directors, representatives, shareholders, affiliates, members, agents, employees, attorneys, subsidiaries, parent companies, successors and assigns, (all hereinafter referred to collectively as the "Company"), with respect to any and all claims, obligations, demands, liabilities, costs, expenses and/or causes of action of whatever nature, whether known or unknown, and waives any and all claims, liabilities, obligations, promises, damages, costs, expenses (including attorney's fees and costs incurred) and/or rights of any kind and description whether known or unknown that he has or may have against Creamer and the Company as of the date of this Agreement, including but not limited to the subject matter of the Lawsuit. Vaughan further discharges Creamer and the Company for any acts and/or omissions by Creamer and the Company before, during or after Vaughan's employment with the Company that may have violated his rights whether inchoate or otherwise and/or constituting a failure to fulfill any obligation or duty arising as a result of any federal, state or local statute or other law, any compensation plan, benefit plan, contract, agreement or understanding, whether express or implied, any tort or other cause of action, including but not limited to any claim arising under the laws or regulations of the State of Alaska, or in any way related whatsoever, to the Lawsuit and/or Vaughan's prior employment with or separation from WestMountain Gold and Creamer.

B. Vaughan understands and expressly agrees that this release includes, but is not limited to, any claims, charges, actions, or lawsuits that might have been asserted under local, state, and federal statutes, ordinances, regulations, Executive Orders, wage and hour, wage payment, and equal employment opportunity legislation, such as the Alaska Wage and Hour Act, the Fair Labor Standards Act, Alaska Human Rights Law, Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Civil Rights Act of 1991, the Family and Medical Leave Act, the Rehabilitation Act of 1973, and Executive Order 11246, all as amended, under any and all state law, common law, tort, or wrongful discharge causes of action or theories, and any employment contract, express or implied, including the covenant of good faith and fair dealing, which might otherwise have governed the employment relationship previously existing between Vaughan and Creamer and the Company.

C. VAUGHAN FULLY UNDERSTANDS THAT HE IS GIVING UP ALL OF HIS RIGHTS OF ANY KIND AGAINST CREAMER AND THE COMPANY, KNOWN OR UNKNOWN, AS DESCRIBED IN THIS AGREEMENT, AND SPECIFICALLY AGREES TO DISMISS WITH PREJUDICE THE LAWSUIT FILED ON HIS BEHALF IN THE LAWSUIT AND ANY RELATED CHARGES, COMPLAINTS OR CLAIMS.

D. The terms of this Agreement contained within Paragraphs 2(A)-(C) as they relate to Creamer are conditioned upon WestMountain Gold fully performing its obligations set forth in Paragraphs 1(A)-(B).

### 3. Covenant Not to Sue.

Vaughan further covenants not to bring any action or litigation of any kind in any jurisdiction against Creamer and the Company with respect to claims of any kind arising out of or relating to Vaughan's past employment with or separation from employment with the Company.

### 4. No Admission of Liability.

Vaughan acknowledges that this Agreement is solely for the purpose of settling any and all claims arising from Vaughan's employment relationship with the Company, and the termination of that relationship, and that Creamer and the Company do not, in executing this Agreement, admit liability for or otherwise make any representations concerning any claims that may exist. Vaughan also agrees to take no action at any time hereafter that would have the effect of disparaging the Creamer and the Company.

### 5. Advice of Counsel.

Each Party warrants that the terms of this Agreement have been carefully reviewed and that each Party understands its content and has had the opportunity to obtain the advice of legal counsel before executing it.

### 6. Voluntary Execution.

A. Each Party further agrees that this Agreement is voluntarily accepted, that the Party is not executing the document as a result of financial disadvantage, that no promise or inducement has been offered or made except as set forth in this document, and that this document is executed without reliance upon any statement or representation by any other Party, its agents, or attorneys concerning the nature and extent of any Party's injuries or damages, or other legal liability of any Party. Accordingly, each Party voluntarily waives any and all rights to void this Agreement, or any of its provisions, due to economic or business compulsion.

B. The Parties enter into this Agreement voluntarily and solely on the basis of their own investigation and knowledge of the facts. No Party is financially disadvantaged, nor has any Party been pressured, harried or otherwise coerced by any other Party in executing this Agreement. No Party relies upon any statement or representation made by or on behalf of any other Party concerning the existence or extent of any legal liability, or the nature, extent or duration of any Damages.

C. The Parties have been advised of, and are familiar with, the decisions of the Alaska Supreme Court regarding settlement and release, including *Witt v.*

*Watkins*, 579 P.2d 1065 (Alaska 1978); *Alaska Airlines v. Sweat*, 568 P.2d 916 (Alaska 1977); and *Young v. State of Alaska*, 455 P.2d 889 (Alaska 1969). The Parties acknowledge and voluntarily assume all risk they may have incurred damages related to the incident and the lawsuit, which are neither known nor anticipated by the Parties as of this date, or known damages related to the incident and lawsuit that may become permanent, progressive or more extensive than is now known or anticipated by the Party.

D. The Parties understand and acknowledge this settlement is a compromise of a disputed claim. The negotiation of this settlement and execution of this Agreement is not an admission of liability on the part of any Party, each of whom expressly denies liability. Likewise, this settlement and execution of this Agreement is not an admission by any Party as to either the existence or extent of any damages.

## 7. Confidentiality.

Vaughan agrees that he, including his counsel and agents, will keep strictly confidential the existence and terms of this Agreement (including but not limited to the consideration paid hereunder) and will not use or disclose the Company's name in any form of media. The sole exceptions to this confidentiality agreement are for communications to Vaughan's immediate family and personal attorney(s), his personal tax advisors (attorney and/or accountant), or as required by applicable law. Vaughan further agrees to take all steps necessary to ensure that confidentiality is maintained by all of the individuals or entities to whom authorized disclosure is or was made, including but not limited to informing them that the existence and terms of this Agreement are strictly confidential and are not to be disclosed to any other person or entity. Notwithstanding this provision, Vaughan or his attorney, upon request for information concerning the Lawsuit, may tell parties to whom disclosure is not authorized only that the claims against the WestMountain Gold and Creamer "have been resolved." Vaughan acknowledges that his agreement to the provisions of this Paragraph 7 is an essential part of this Agreement and of WestMountain Gold and Creamer entering into this Agreement. It is hereby agreed that any action for breach of this Agreement shall be commenced in any court of competent jurisdiction within Alaska.

## 8. Integration.

This Agreement embodies the full and complete understanding of the Parties and upon execution, supersedes and renders null and void any and all prior understandings and oral agreements between the Parties.

## 9. Modification.

Any modification of this Agreement shall be deemed null and void unless made in writing and signed by all the Parties or their legal counsel. Each Party forever relinquishes the right to modify or rescind this Agreement upon any actual or alleged unilateral or mutual mistake of fact.

### 10. Severability.

In the event that a court of competent jurisdiction deems any provision or part of this Agreement invalid, all other provisions of this Agreement shall remain effective, valid, and legally binding.

### 11. Binding Effect.

This Agreement shall be binding upon each Party and its representatives, successors, and assigns, and shall inure to the benefit of all Parties and their representatives, successors, and assigns.

### 12. Agreement Governed by Alaska Law.

This Agreement is made and entered into in Alaska and any dispute that may arise under the Agreement shall be resolved in the Superior Court for the State of Alaska, applying the substantive laws of the State of Alaska.

### 13. Counterparts.

This Agreement may be executed in one or more counterparts, each of which shall be deemed original and said counterparts shall constitute but one and the same instrument that may be sufficiently evidenced by one counterpart.

THE PARTIES ACKNOWLEDGE THEY ARE REPRESENTED BY, OR HAD THE OPPORTUNITY TO CONSULT WITH, LEGAL COUNSEL IN REGARD TO THIS AGREEMENT. THE TERMS OF THIS AGREEMENT HAVE BEEN CAREFULLY READ AND ARE FULLY UNDERSTOOD AND VOLUNTARILY ACCEPTED BY THE PARTIES FOR THE PURPOSE OF MAKING A FULL AND FINAL COMPROMISE AND SETTLEMENT OF ALL CLAIMS AND DAMAGES, DISPUTED OR OTHERWISE, AGAINST THE PARTIES. THE TERMS OF THE AGREEMENT ARE CONTRACTUAL AND NOT MERELY A RECITAL.

Date: _11-10-2016_

_____
Daniel Vaughan

WestMountain Gold, Inc.

Date: _____

By: _____

Its: _____

valid, and legally binding.

## 11. Binding Effect.

This Agreement shall be binding upon each Party and its representatives, successors, and assigns, and shall inure to the benefit of all Parties and their representatives, successors, and assigns.

## 12. Agreement Governed by Alaska Law.

This Agreement is made and entered into in Alaska and any dispute that may arise under the Agreement shall be resolved in the Superior Court for the State of Alaska, applying the substantive laws of the State of Alaska.

## 13. Counterparts.

This Agreement may be executed in one or more counterparts, each of which shall be deemed original and said counterparts shall constitute but one and the same instrument that may be sufficiently evidenced by one counterpart.

THE PARTIES ACKNOWLEDGE THEY ARE REPRESENTED BY, OR HAD THE OPPORTUNITY TO CONSULT WITH, LEGAL COUNSEL IN REGARD TO THIS AGREEMENT. THE TERMS OF THIS AGREEMENT HAVE BEEN CAREFULLY READ AND ARE FULLY UNDERSTOOD AND VOLUNTARILY ACCEPTED BY THE PARTIES FOR THE PURPOSE OF MAKING A FULL AND FINAL COMPROMISE AND SETTLEMENT OF ALL CLAIMS AND DAMAGES, DISPUTED OR OTHERWISE, AGAINST THE PARTIES. THE TERMS OF THE AGREEMENT ARE CONTRACTUAL AND NOT MERELY A RECITAL.

Date: _____

_____
Daniel Vaughan

Date: 11/7/16

WestMountain Gold, Inc.
By: _____

Its: - DIRECTOR.



Exhibit B